to 11072 Sol Quest Church of Mother Earth, Inc. v. Attorney General. We have Mr. Brett for the appellant. Mr. Brett, you've reserved five minutes for rebuttal, I see. You may begin when you're ready. Your Honor, again, my name is Derek Brett. I represent the appellants in this matter. Seated at counsel table is my co-counsel, Brian Phillips. Your Honors, the court, prior to these arguments, posited some questions to each side. I'd like to be able to begin simply by answering those questions for the court. The first question, and these are related questions from my understanding, is what does the meaning of the term under as used in 21 U.S.C. section 877, what does that mean? And then secondarily, it relates back to the DEA's April 16, 2021 letter regarding whether it was a determination under the Controlled Substances Act and whether it was a determination under the Religious Freedom Restoration Act, which I'll be referring to throughout this as simply RFRA. First, under means under the authority of specifically the Controlled Substances Act as that term is used in 21 U.S.C. 877. For additional context, though, we need to be able to go back and reference the other adjoining statutes within that particular subchapter. And that's telling with regard to the actions of the appellees in this particular matter. Specifically, if we go back to section Gesundheit 823A1, it references what the scope of the chapter is for purposes of exemptions. Quote, medical, scientific, research, or industrial channels. Note, there is no language whatsoever with regard to the issue of religious exemptions. It's never been passed out by Congress, and RFRA stands on its own in the same fashion since 1993 as really articulated under the UDV case as well as subsequent cases with regard to the specific scope and the plain meaning of the RFRA. Okay, so that's helpful, I think, because as I understand this provision, 877, if the findings, conclusions, determinations were under this subchapter, then you've got to go to the Court of Appeals. If they weren't under this subchapter, then you can go to the District Court. That's sort of how where this kind of nets out. So it sounds to me like what you're saying indirectly is that your contention is that the April 2021 determination of the DEA was not under the CSA because the CSA itself doesn't address religious exemptions. This case is about religious exemptions, and so to the extent there is a determination about a religious exemption, this is, in effect, a determination under RFRA. So you get to go to the District Court. And this is something that, I believe you're correct, Judge Newsom, this is something that was cited most prominently by the appellees but also addressed by us in our reply brief. In that particular case, when we're talking about the Affordable Care Act, Justice Thomas referenced and said the APA, the Administrative Procedure Act, hadn't even taken into account RFRA as was intended under RFRA itself and as was intended by the Supreme Court when it announced its decision in UDV. So it's rather remarkable. But in this particular case, the argument is really that they don't even have authority if it existed, which it doesn't, under the CSA. If we go to Section 871, which I believe would be deemed consistent with the Administrative Procedures Act, it requires that rules and regulations be articulated by the Attorney General. In this particular case, and this is consistent with the case law that we cite to in our briefs, there are no rules or regulations that are actually promulgated by the appellees. Rather, what you have is you have an interim non-binding guidance, which by its plain language even says this is non-binding and doesn't need to be adhered to, which is guidance. It purports to be under RFRA. I just wonder if we're overcomplicating this. You got thrown out of the district court because the district court said you have to go to the Court of Appeals because this determination is under the CSA, right? Isn't that how you got bounced? Yes. So here, presumably, you're saying that was wrong because this wasn't a determination under the CSA. This was a determination under something else. And at least, you know, I'm just speaking for myself, that accords with what I think the plain meaning of the word under is. And especially as I read the April 2021 determination, it's RFRA from stem to stern. That's correct, that the April determination purported to be under RFRA but without any lawful authority to go under RFRA. Yes. So you might think that they were wrong about what they said about RFRA. Presumably, you think they were bad wrong about what they said about RFRA. But in any event, this was a determination from your perspective under RFRA, not under the CSA. So you're just saying, hey, listen, let me go back to district court and fight my fight. That's exactly it. And it's so problematic, Judge Newsom, because they did what their own attorney general advisory from Attorney General Sessions, as well as what the Supreme Court said in the Little Sisters matter, said that they should not do, which is make a determination with regard to the religious sincerity. That's something that is verboten. And yet, that's exactly what the appellees did in this particular matter. But that's an argument, presumably, it's not really before us, because we don't, I mean, we don't really have the merits of this determination before us. You just, I think anyway, your very narrow position is, I ought to be able to make the argument that you were about to make to me, you ought to be able to make that to the district court and have the district court listen to you on the merits. We would adopt that statement, yes, Judge Newsom. Where, though, does RFRA give the DEA authority to make this kind of determination? I mean, it seems it almost doesn't fit anywhere, but why isn't the CSA a better place for it to land, given that there's, RFRA doesn't, I don't think, offer the DEA jurisdiction to do this? Well, there is no jurisdiction whatsoever, Judge Grant, for what has happened in this case. DEA does not have any jurisdiction whatsoever, because Congress has not passed any, any type of, any type of allowance to allow for the DEA to enter into this. They have, and by the way, again, it's been now almost 17 years since the UDV case came down. If, if the Appellees genuinely believed that they had authority to act, then they simply wouldn't have issued some type of non-binding interim guidance. They would have promulgated regulations that would have been subjected to the Administrative Procedure Act, and submitted those ultimately, and subjected them to public hearing, to public comment, to notice requirements under the APA, and then ultimately would have submitted those to Congress. In this case, despite nearly 17 years, the Appellees have never done that. They've been running under a non-binding guidance that, in effect, violates not just RFRA, but the jurors, the controlling jurisprudence that's already out there, violates UDV, violates the District Court's ruling in Church of the Holy Light, which was District of Oregon, cited in our briefs, violated, violated even Attorney General Sessions' 2017 memo that's, that, that said, you cannot do this. And yet, Judge Grant, that's what they're, that's what they're basing their April 16, 2021 letter on, this authority, which doesn't give them any real authority. You might, you might well be right. The problem is, once they're at least assertively operating under their 877 authority, aren't you in that box as far as what you could challenge? I mean, maybe you could have brought a District Court action, a declaratory action before, say, you sent the request, or before, before you engaged with whatever potentially faulty process they had laid out. But once you're in that bucket, aren't you stuck there for purposes of jurisdiction over an appeal, over the case? We don't believe so, number one. Number two, Judge Grant, when the DEA sent its August 1, 2016 correspondence to SolQuest and said, you've got to apply for an exemption under this particular, which we're arguing unlawful process, SolQuest responded out of fear that it would be subject to, to DEA penalty, to DEA action. But we, we don't waive anything by initially subjecting ourselves to this. And in fact, if we go back to the Church of the Holy Light case in the District of Oregon, that's how that case started out. It started out as part of that, of that ad hoc, ultra viris guidance slash exemption process, which could not under law ever exist. That's extremely problematic. And it not only does what it does, and the effect is, in my last 20 seconds right now, it, if we go under 877, it effectively undermines the, the scope of what RFRA is there for. And it not only undermines RFRA, it undermines the specific license imposed by Congress under RFRA for the judiciary to have sole jurisdiction to make these types of determinations.  I've, I've, if Judge Pryor doesn't mind, I have a few more questions. Has, DEA hasn't taken any action against your client in the interim, have they? They have not yet taken enforcement action against, against my client. The fear is that they will if this, if this practice is going to be upheld. Okay. Thank you. Thank you. Mr. Sturgill. Good morning, may it please the Court. I'm Lowell Sturgill from the Department of Justice representing the government. The district court, the DEA's denial of this, uh, so-called religious exemption request was under the Controlled Substances Act, and that's true for multiple reasons. First of all, the religious exemption request requested an exemption from the Controlled Substances Act, and DEA only has authority to address that request under the Controlled Substances Act. For example, plaintiffs couldn't have sought an exemption from the Controlled Substances Act from HHS or Department of Labor or something. It's only DEA that they could ask because it's DEA that Congress has invested with the authority to regulate the act to begin with. How do you make sense then of the determination itself? As I said, I mean, I've read it. It's not a long document. It seems to me it's an, it's an analysis. It's a careful analysis. It reads like a judicial opinion of RFRA. It doesn't have anything to do with the CSA. Not one word. John, I think that's not true for a couple of reasons. First of all, uh, the, uh, the mere fact that a statute or, well, a statute outside of the Controlled Substances Act can provide a subset of authority for an exception to the Controlled Substances Act does not mean that DEA is not acting within its authority, again, unlike HHS to regulate controlled substances under the act. And they're all, every court of appeals that has addressed this question has so held. For example, in St. John's, the Seventh Circuit, uh, addressed the situation where, uh, a plaintiff sought an exemption, uh, from, uh, from the plans that a private company made to develop a rail, uh, an airport runway. And those plans would have involved taking their property. So the, uh, the plaintiff, uh, asked the FAA for an exemption and the FAA said no. They can, FAA considered RFRA, said no, we don't think you have a RFRA right. And then the plaintiff sued in district court and the district court said no, you're barred by a provision, a channeling provision that's very similar to Section 877. In fact, that statute also uses the term under something. So, and then, uh, the court of appeals said, yeah, that, that exclusive jurisdiction is in the court of appeals because even though RFRA provided the substantive grounds for what the plaintiffs wanted, this, it all arose from the FAA's authority to regulate what was going on to begin with. And I guess I would have thought, and you can tell me that you think I'm wrong, um, that just the ordinary understanding of the word under as used here would just mean something like in accordance with. Um, you know, I just kind of scoured dictionaries to try to, and it's, it's hard, right, when you're looking for a word like under to figure out what, which, which of these 15 prepositional usages is, is most on point. But the ones that seem to say, like sort of as it relates to the law, say something like in accordance with, um, you know, so like one, one says, uh, you know, in accordance with under the provisions of the law. And it seems like to the extent that the determination here was made in accordance with anything, again, like naturally and just from the document itself, it seems like it was made in accordance with RFRA. Your Honor, I think that what's important here is to look at the statutory context and just reading the statute, the key term is under this subchapter, if you look at 877. So what's going on is the role, and I'll explain this more, the role that underplays here is to identify which subchapter a statute is talking about. 877 applies to the Attorney General, and the Attorney General has authority to do all sorts of things under all sorts of statutes, and that the Attorney General has delegated the authority to regulate the Controlled Substance Act to the DEA. So when you read this statute, it's like, okay, 877 channels certain things directly to the Courts of Appeals, and among so which things are there, given that this is addressed to the Attorney General? Well, it says under this subchapter. Well, if you look at what subchapter is involved, it's subchapter 1 of Title 21, that subchapter incorporates the Controlled Substances Act. So when you look at this, the key term, again, is you can't divorce under from what it's doing and from the other words. So what the 877 says is, among all the things going on, what goes straight to the Court of Appeals is things where the DEA is applying its authority under the Controlled Substances Act, and that's what happened here. A couple of other points I think that are important. The plaintiffs wish to be treated the same as certain other, a couple of other religious groups that have been allowed to use IOWASCA. One is the Daime Church from the Ocentro case, another is Church of the Holy Light. Well, what happened in those cases is that for reasons that don't apply here to this church, the DEA was allowed to allow that use because it registered them as lawful importers under the Controlled Substances Act. That's I believe it's Section 823. So again, that I think demonstrates that even what they wanted could have been granted to them under the Controlled Substances Act. The second point is Section 822D of the Controlled Substances Act authorizes the DEA to grant exceptions to the Controlled Substances Act. And if you look at what plaintiffs' religious exemption request to the DEA wanted, what they wanted was an exception to the Controlled Substances Act. So the Act itself provide the mechanism and the authority for DEA just to consider what plaintiffs requested. Now again- I guess that's how I was thinking of it, that the Controlled Substances Act gives certain authorities to the DEA. And one of those authorities is potentially granting exceptions, whereas in the pure RFRA context, it's not so much getting an exception to a statute as getting a judicial order that you must be allowed to perform your religion in the way that you see fit, right? Those seem to me to be slightly two different things. Well, your Honor, I do think that Little Sister's case stands for the proposition that agencies can provide exceptions to generally applicable statutes under RFRA. And they're required to consider those kinds of requests when they come in. But that doesn't mean that for purposes of a channeling statute, and that's what we're talking about here. The whole question is whether, like, which court should this go to? And Congress has said anything basically that involves the DEA doing its job of applying the CSA, that goes directly to the Court of Appeals. It kind of makes sense, right? The purpose of these channeling statutes is that when a party, and I think one of the judges mentioned this, you know, they chose to ask the DEA for an exception. Having done so, the DEA did its job. It did an extensive investigation. I mean, did it do its job really? It's taken a minute, I would say, for the DEA to respond to this request. Your Honor, there was some delay, undeniable, but that delay itself is not actionable. And when you look at the letter, what they actually did once they start, once they were able to complete this investigation, it was a thorough investigation, and the plaintiffs actually don't really say much about, they don't really challenge the compelling interest part of that letter at all. They just say, oh, well, the DEA doesn't really care about ayahuasca, it's letting all these other groups use it, and that's it. They don't want to do this. Has the DEA granted any exemptions through this process? So the DEA, as I mentioned, has registered two ayahuasca users. Right, but not through this process, right? Or am I misunderstanding that? Not through the application that the SolQuest went through, or am I misunderstanding that? So they mentioned Church of the Holy Light and how that's supposedly, we're being consistent with that, but that's not the case, because this process didn't even exist at the time, Church of the Holy Light. Right, what I'm saying is, since this process has existed, has DEA granted any religious exemptions through it? I'm not aware if they have or haven't, to be honest. The two that I know that they have are the ones that I've mentioned. So let me just make sure I understand. So is it your position that the petitioner could have chosen to go directly into court, but because it chose to avail itself of the DEA process, then it's stuck with that as far as appeal? Exactly. Trying to get back to the purpose point, which I think works, but I take the judge's question too, the point of these channeling statutes is, when somebody does ask the agency, then the agency is supposed to do an extensive investigation, and then that is supposed to go to the Court of Appeals, because otherwise, you'd have a completely duplicative waste of judicial resources, because the plaintiff would be allowed to just start over in district court where it's unnecessary. The second part, I think, to the judge's question is, the St. John's case makes this point. If the agency actually doesn't do a good job of investigating something, then the remedy under these channeling statutes is a remand to the agency and say, do it right. You did it wrong, do it right, as opposed to letting the plaintiff completely start over in district court, which again is completely duplicative. I think again, the purpose of these channeling statutes supports the district court's judgment, this all happened under the CSA, judging from the plaintiff's request, the authority that is under the CSA to consider this kind of request, and plaintiff's position on RFRA is sort of odd to begin with. One way of looking at it is, I think they're saying that, they asked for an exception, so I think, at least at that point, they thought the DEA had authority to at least consider an exception, but they don't seem to think the DEA had authority to deny it. That's odd, right? That's an important point. Then, everything they say about RFRA is just, this second part I want to think is important, and that is, they think that RFRA gives them the opportunity to sort of sidestep this kind of channeling statute, and it doesn't. First of all, RFRA only creates a cause of action. Every court that's addressed this question has held that. RFRA creates a cause of action, it doesn't create jurisdiction, it doesn't tell you which court they can go to, it just says you have a cause of action. Now, it does say you can bring that in court, it doesn't say that they can't raise RFRA as a substantive ground for relief before an agency that has authority to actually address the request. Again, I think the most important thing to note, they can't go to HHS or labor for an exemption to the Controlled Substances Act. That they can only do the DEA. Can I ask you a quick question?  So, I think your adversary said that the statute provides, expressly I guess provides the DEA the authority to give exemptions on like other bases, is that right? So the statute provides that the DEA can register a user as a lawful importer or distributor of a controlled substance if that's consistent with the public health and safety. And that's how Church of the Holy Light and the Dime A Church got their permission under the DEA, under the, by the DEA to use ayahuasca. So that's one kind of process. The second process is Section 822D authorizes the DEA to grant an exception from the Controlled Substances Act. And again, that's... And does it specify grounds or no? It says if it's consistent with the public health and safety. I see. And here, DEA's position based on the denial letter, as explained in the briefs, is that it would not be consistent with the health and safety to grant this exception. So there are two grounds in the CEA itself that not only authorize the DEA to consider this kind of a request, which plants chose to make. That's what they, that was their choice. Having done that, the DEA did its job. It applied the CSA. The other thing is to notice that if you look at their, again, their denial letter, even in denying the RFRA claim, that was heavily, the compelling interest part of that was heavily based on DEA's application of its expert judgment in determining whether an exception could be made that wouldn't implicate public health and safety. That's what DEA does. It develops expertise in knowing what these substances are and what they can do to people and diversion concerns. Those are all CSA concerns. What about, what about the sincerity of a religious belief? I'm not sure that DEA is an expert on that to the extent that anyone can be. So I think they are in the sense that one of the grounds given was that DEA has again worked with Church of the Holy Light and they worked with the Dime Church and they talked to them and they made a judgment that the record here regarding sincerity didn't sort of map on to what was going on in those other contexts when there kind of was sincerity. So I think the DEA did have that experience that it was able to bring to bear on this. But you're right, no agency sort of can claim that it has a, you know, inherent understanding of somebody's religion or something. That's not what the DEA does. And is that any different from, say, in the Title VII context where the employer has to determine whether the religious belief is sincere? They don't have any particular expertise in that area. Exactly. But again, I think critical to what's going on here is for channeling purposes, what was the DEA doing when it considered plaintiff's religious exemption request? It was applying its authority under the Controlled Substances Act. And the fact that RFRA provided, you know, the statutory framework for how it went about doing that doesn't mean that DEA was not doing its job under the Controlled Substances Act. Does it matter that RFRA imposes a more stringent requirement as far as the government interest that you have to look at the particular impact on the person or the entity? Not for channeling purposes, Your Honor. Again, the fact that some other provision of law outside the Controlled Substances Act can provide either the statutory framework or substantive right for an exemption doesn't mean that the question doesn't arise under the Controlled Substances Act for channeling purposes. Hemp Industries, if I'm out of time, but just very briefly, the D.C. Circuit's Hemp Industries case is right on point too there because there the plaintiffs wanted exception from the CSA under a separate statute called the 2018 Farm Bill. And they made that claim to the DEA, and the DEA said no in the administrative process. Then they tried to sue in district court over the same thing, and the D.C. Circuit said no under Section 1877, exclusive jurisdiction is in the Court of Appeals for that kind of a claim. Even though, like as here, plaintiffs were reaching outside the CSA for some other statute that they said gave them a substantive right to an exception under the CSA. So I'm really over my time, but... Can I ask you just one follow-up to my question? I just want to make sure that I've got the statute squared away on my head. So what was the provision again that you said authorizes the DEA to grant exceptions?  Yeah, I just want to make sure. Sort of one, just to be precise. Section 822D expressly allows for exceptions to the Controlled Substances Act. But the second part of that is that, I believe it's Section 823, whichever section authorizes DEA to register importers to import and use controlled substances, that also provides authority for the DEA to allow for religious uses of drugs, and that's Church of the Holy Light, and that's how they got theirs, Church of the Holy Light and the Diomede Church. So there are really two... 822 and 823. I think it's 823. I wouldn't swear to it, but I think whichever one gives the DEA authority to grant registrations. And, you know, I think in addition, just to wrap up, in addition to all of that, the entire Controlled Substances Act, numerous provisions make it clear that it's the DEA that has authority to regulate controlled substances. Plaintiffs are seeking an exemption from that. And really, that's what means, what makes this arise under the Controlled Substances Act, especially if you look at the text, as we talked about how it, you know, the key term is under this subchapter and not just under reviewed just by itself. I'm way over my time now, but happy to take any other questions or just sit down. Thank you. Thank you. Rebuttal? Mr. Brett? Thank you, Judge Pryor. One issue that has come up, both with some initial, an initial question when I was first up here, as well as when the Appelese Council addressed it, there was no waiver. And in fact, I don't believe that any waiver is necessarily possible. But notwithstanding, three and a half years after we submitted, after SolQuest submitted to a non-process and put in, there was no response from the DEA. There was no inquiry from the DEA. The calls into the DEA to find out the status of this supposed religious exemption process, fell on deaf ears. And only then did SolQuest file its suit in the district court. So even if there was this notion of waiving your RFRA rights even exist, at that point, SolQuest and Mr. Young availed themselves specifically of their rights under RFRA and continued that process. What he's, what the Appelese Council is referring to, their investigation, they're referring to it as an investigation. The district court's case was stayed without a response of pleading under the agreement, which was quoted in an appellant's materials, an agreement to negotiate for the settlement. That's what happened. And then, without providing any, any notice to, to appellant, the Appelese continued to do their own quote unquote investigation. And then that ultimately culminated in this April 16, 2021 final ruling. The final ruling though, requires actual process, actual regulations. Here, there's nothing except a non-binding interim guidance. It's been in effect for 16 plus years. Can I ask you to, just to get back to the under question, obviously from my questioning earlier, I have some sympathy for your position, but I'd like to get you to respond to Judge Grant's question that RFRA doesn't empower DEA to do anything. Only the CSA empowers DEA to do anything. RFRA is a super statute that, that suppresses any other statute that might come into conflict with it. So, I guess what I'm asking is DEA issued this, whatever it was, this determination in April of 2021, pursuant to some authority. And what authority was it? By what authority did DEA have to, why'd you go? Why'd you ask DEA? Because presumably you thought they had some authority to grant you an exemption, but pursuant to what statutory power did they have that authority? SolQuest submitted its initial exemption application to DEA due to the August 1, 2016 letter where DEA commanded it to do so. That was the only basis by which they actually went through with that. Now, again, there was no process in place. If they're basing their invocation of, of power under RFRA, of power under the CSA, based upon a page and a half guidance that they even say is non-binding. But does, does RFRA give the DEA power or does it actually remove power from the DEA in certain situations, right? It removes the DEA's ability after a person files suit and wins to enforce its, its rules against them. The argument is that the, that the RFRA outright removes the DEA's contrary authority as, as Justice Gorsuch said in the Bostick case, which we cite Bostick v. Clayton County, Georgia. The, the authority is removed. This is a super statute and any other statutes that conflict with it will have to fall subject to RFRA and the rights that are articulated under RFRA and the specific jurisdiction provided to the judiciary, who is the most ideal source to, to rule upon standards such as compelling interest and narrow tailoring. I think everybody understands that RFRA can in effect countermand other statutes, trump them. Judge Grant's question, I think, my question I'll say, is, is there, is there anything in RFRA that empowers the DEA to make determinations of any sort or to grant exemptions or is the only statutory authority that DEA has here under the CSA? According to the case law, Congress has to grant that specific authority under RFRA and has not done so. So does that mean then that by default, whatever DEA said in this determination, that its determination was under the CSA? Sorry, could you repeat the question? So you say Congress could presumably empower the DEA to grant exemptions under RFRA, but it hasn't done so. So to the extent the DEA is off, is exercising any statutory authority here, is it, is it actually, is it exercising statutory authority under the CSA? It cannot exercise a statutory authority under the CSA where there has been an invocation of a religious authority to its rights and where it ends up otherwise conflicting with, with what is under the CSA. Simply, the appellees don't have any authority under the CSA when it collides with RFRA. If there's a process, then that process needed to be articulated by Congress, put into place by Congress, and regulations would have had to have been, proposed regulations would have had to have been submitted by the appellees, but that was never done. And so there were no amendments to RFRA over the past 30 years this year. And there have been no regulations ever proffered by, by either of the appellees seeking to in some way reinforce whatever illusory authority that they believe they have. I see my time is over. I thank the court. I actually have a question for you. This is not, I hope that the rest of the panel will indulge me, because I don't think that anyone thinks that we're considering this today, but I'm just curious what your answer is. Let's say that a different religious group, or a different group, not your group, had a, you know, documentary in which members of the group said, this isn't really religious, but we know that our religious sincerity can't be challenged. So when we make our case under RFRA, we're going to say that this, we just, heroin is our religious desire, right? Do you think that, do you think that anyone could look at that sort of evidence and question the religious sincerity of the group? Or do you think it's just a blanket ban on questioning religious sincerity? Well, I mean, under, under the hypothetical that you presented, number one, it's not for DEA to make that determination. It's for the courts to make that determination. Number two, people affiliate with religious institutions, even if they're not actual members of those religious institutions. In this, in the hypothetical that you presented, if you have an individual, as opposed to the institution, or opposed to an actual adherent, who's petitioning for a recognition of their religious rights under RFRA, then they're entitled to the same robust protections that Congress anticipated under RFRA, and that the founders intended under the First Amendment's Free Exercise Clause, and to its, and to its predecessor documents, including those originally written by the state of Virginia and Thomas Jefferson. Thank you. Thank you.